## RIPLEY vs. LARMOUTH.

56b 21
41ap146
160a 298

It is an elementary principle of construction that effect must be given to every clause and part of an instrument, if it can be done without any violence to the other parts of the instrument. In other words, each part of the instrument shall be operative, if it can consistently be done.

L. having indorsed for the accommodation of W. six promissory notes, for different sums, all of which were then outstanding, W. executed a chattel mortgage, which recited the making and indorsing of three of such notes, for $625, $320 and $300, respectively, (the three not mentioned being for smaller sums,) and was conditioned to indemnify L. against the payment of those three notes, or any or either of them, and against all future liabilities to be incurred by L. for W. Then followed a condition to indemnify and save harmless the said L. of and from all damages, costs, charges and expenses which he *had incurred or might incur, or become in any way liable for, on account or by reason of the use of his name as maker, indorser or otherwise, for the mortgagor's accommodation or benefit, &c.* *Held* that this latter condition was clearly surplusage and meaningless, unless it was made to apply to some other subject than the three notes specified and the future indorsements which had been before provided for.

Accordingly *held* that the parties intended the latter clause of the condition should cover any balance which L. might have to pay upon the three small notes not mentioned in the mortgage.

APPEAL from a judgment in favor of the plaintiff, rendered upon the report of F. W. Hubbard, Esq., sole referee.

*S. C. Huntington*, for the appellant.

*J. F. Starbuck*, for the respondent.

*By the Court*, FOSTER, J. The action was brought to recover the value of 26 cows, which the plaintiff claimed had been wrongfully taken from him by the defendant and converted to his own use.

The defendant claimed to own them by virtue of a mortgage, upon them, executed by one John Wells, a former owner of them, and under whom the plaintiff claimed to own them. The principal facts appearing on

the trial were as follows:   On the 17th day of March, 1853, the defendant executed with John Wells, for the accommodation of Wells, and as his surety, a note for $200, payable to one Stickney, at one day after date, with interest, and on the 10th day of October, 1856, paid $109.21 on it, and took it up.   On the 8th day of January, 1854, Wells leased to the defendant his farm of 150 acres, together with 30 cows, of which the 26 in question were a part, for five years, commencing on the 1st day of November, 1854, at the yearly rent of $350, and the defendant took possession of the farm and cows, under and in pursuance of the lease.

On the 26th of December, 1854, the defendant and one Lowry indorsed the note of Wells, for his accommodation, for $625, payable to one Baker, with interest, and payable the 5th of November, 1855, and on the same day Wells executed to them a writing authorizing them to hold and apply the amount of the note and interest to the payment of it, out of the rents of the farm.

On the 10th of April, 1855, the defendant indorsed a note of Wells, and for his accommodation, for $100, payable to bearer, at six months, with use, and after March 17th, 1856, paid $17.14 on it, and took it up.   On the 13th of December, 1855, the defendant and one Westcott executed with Wells, and as his sureties, a note for $320, payable to the bearer one year from date, with interest, and on the 14th of March, 1856, he executed to them a writing authorizing the application of the rents of the farm to the payment of it, subject to the previous one to secure the note for $625.

On the 12th of March, 1856, the defendant indorsed for Wells, and for his accommodation, his note for $100, payable at Hungerford's bank, at 60 days from date, and on the 21st of April, 1856, the defendant paid it and took it up.

On the 14th of March, 1856, the defendant executed

with Wells and as his surety, a note for $300, to one Woodard, payable in one year from the then next December, with interest.

On the 17th of March, 1856, Wells executed a chattel mortgage, to the defendant, upon the 30 cows leased to the defendant with the farm. The mortgage recited the making and indorsing of the three promissory notes for $625, $320 and $300, hereinbefore referred to, and then proceeded: "Now therefore, in consideration of the premises, and for the purpose of securing and indemnifying the said Hugh Larmouth of and from the payment of said notes, or of any or either of them, and any part thereof, principal or interest, and from all costs, charges, damages and expenses which the said Larmouth may be put to, incur or sustain in consequence of signing, indorsing or in any way becoming liable therefor, and also to fully indemnify and at all times hereafter save the said Hugh Larmouth of and from all loss, damage and charge and expenses which the said Larmouth may be put to, incur or sustain by reason or on *account of any signature or liability which the said Larmouth may hereafter make or incur for my accommodation,* at my request or for my benefit, I do hereby sell, transfer and assign to the said Larmouth the said 30 cows, the same as heretofore leased with my farm to the said Larmouth. Provided always, and this conveyance is upon the express condition, that if I, John Wells, shall and do pay and discharge at maturity the said several promissory notes heretofore mentioned and described, and shall pay and fully discharge at maturity all such notes and obligations which said Larmouth shall or may hereafter sign, indorse or otherwise become liable for me, at my request or for my accommodation, *and shall and do at all times hereafter fully indemnify and save harmless the said Hugh Larmouth, of and from all damages, costs, charges and expenses which the said Larmouth has or may incur or become liable for on account or by reason of the use*

*of his name as maker, indorser or otherwise, for my accommo-
dation, or for my benefit, then this transfer to be void and of
no effect ; but in default of the payment of said notes or other
obligations, together with the interest, damages, costs and
charges, or expenses incurred or to be incurred thereon, accord-
ing to the conditions above expressed,* then the said Hugh Lar-
mouth, his heirs, executors, administrators and assigns
shall have power," &c.

On the 25th day of July, 1856, Wells assigned his coun-
terpart of the lease to the plaintiff, subject to the payment
of the three notes of $625, $320 and $300; and on the
8th of October, 1856, he executed to the plaintiff a bill of
sale of the 26 cows, to pay a pre-existing debt; the cows
then being in the possession of the defendant, and having
been in his possession from the time of the commence-
ment of the lease, until he disposed of most of them in
1860, and the residue before the commencement of the suit.

Before the first day of November, 1859, the defendant
had paid and taken up each of the said three notes.    The
defendant proved several failures on the part of Wells to
perform his covenants in the lease, for which the referee
allowed him damages to the amount of $171.    He also
proved two notes executed by Wells to himself, one for
$78, dated December 1st, 1855, and due presently, and the
other for $38.51, dated December 24th, 1856, also on de-
mand.    The referee refused to allow the two notes to
apply on the rent.    The referee also held that the mort-
gage upon the cows did not include any of the notes upon
which the defendant was maker or indorser, executed be-
fore the date of the mortgage, except the ones of $625,
$320 and $300.

The defendant paid no rent for the farm, except what was
paid upon the notes hereinbefore mentioned, and which
payments upon the notes allowed, and damages, were not
equal to the rent, and the referee held that the mortgage
was satisfied, and that the defendant had no title to or lien

Ripley *v.* Larmouth.

upon the cows, when this suit was brought, and ordered judgment for the plaintiff.

Several questions are presented for our decision, but I shall examine but one, which I think disposes of the case. If the referee was right in limiting the mortgage to the demands which he did, then the mortgage was satisfied, and the defendant had no claim to the cows; but if the mortgage was intended to embrace and cover the notes of $100 each and the note of $200, then there was a balance still due upon the mortgage, and the property in the cows remained in the defendant.

The plaintiff cannot claim a more strict construction of the mortgage for his benefit, than could Wells, if the controversy were between him and the defendant; for he purchased the cows with full knowledge of the mortgage, and to satisfy an old debt which Wells owed him. · And the rule is that an instrument is to be construed most strictly as against the party who executes it, and liberally in favor of the party to whom it is delivered.

Now what was the situation of Wells and the defendant when the mortgage was executed. The defendant had executed and indorsed, in all, for him, six notes, three of them amounting to $1245 of principal, and the other three amounting to $400. Specific liens had been given by Wells upon the rents to secure the payment of about $900 of the three large notes, and so given that the note of $625 had priority, and the other one of $300 was executed by the defendant only three days before the mortgage was given. It was natural that the mortgagor should provide · in the first place for the payment of these three notes, specifically. It is also apparent that he contemplated the further use of the defendant's name, for his benefit and accommodation, and hence the clause which provided for future liabilities to be created or incurred by the defendant. The parties both well knew that in addition to all that, the two $100 notes, and the $200 note, were also

outstanding. It is probable, also, that it was in the contemplation of both parties that Wells would pay up these notes, without resort to the rent to do so; and we find that upon the $200 note he did pay up all except $109.21, which was afterwards paid by the defendant, and that upon one of the $100 notes, he paid all but $17.14, which sum was also afterwards paid by the defendant. The fact that it was expected Wells would pay these notes was a good reason why they should not be specifically set out at length in the mortgage; while it would be natural that they should, at the same time, provide for securing the defendant against their payment by him.

It is an elementary principle of construction, that effect must be given to every clause and part of an instrument, if it can be done without any violence to the other parts of the instrument. In other words, that each part of the instrument shall be operative, if it can consistently be done.

The parties had provided specifically for the securing of the three large notes, and also for all future liabilities to be incurred by the defendant for the plaintiff, and yet they continue on and provide to indemnify and save harmless the said Larmouth of and from all damages, costs, charges and expenses, which the said Larmouth *has* or *may incur, or become in any way liable for, on account, or by reason of the use of his name, as maker, indorser or otherwise, for my accommodation or benefit, &c.* All of which is clearly surplusage and meaningless, unless it is made to apply to some other subject than the three large notes, and the future indorsements, which had been before provided for. I cannot doubt that the parties intended that clause to cover any balance which the defendant might have to pay upon the three small notes; and if so, then, as I said before, the rents were insufficient to discharge the mortgage.

Entertaining these views, I hold that the defendant had

the legal title to the cows, as against the plaintiff, and that the action could not be maintained, and as, if I am correct, it disposes of the whole case, I omit to examine the various other questions presented.

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

