THEODORE SATTLER, as Assignee for the Benefit of Creditors of the Firm of JOHN A. MEIERDIERCKS & SONS, Appellant, *v.* GEORGE W. HALLOCK et al., Respondents.

1. BAILMENT — DELIVERY OF MATERIAL FOR MANUFACTURE AND DIVISION OF PROFITS. When property in an unmanufactured state is delivered by one person to another, upon an agreement that it shall be manufactured or improved by his labor and skill, and when thus improved in value shall be divided in certain proportions between the respective parties, or sold and the proceeds divided, it constitutes a bailment, and the original owner retains his exclusive title to the property until the contract is completely executed, although the labor to be performed by the

bailee may be equal or even greater in value than that of the property when received by him.

2. Contract between Farmers and Another for Delivery of Produce for Manufacture into Pickles and Division of Profits, Importing a Bailment and not a Sale. A contract between certain farmers and a business firm, by which the farmers were to furnish and deliver, at a factory owned by them, specified amounts of farm produce, to be received jointly by a representative of the farmers and of the firm, and to be manufactured into pickles by the firm, it furnishing the labor, utensils and additional materials, the products to be sold as the products of a Farmers' Company subsequently organized, and the net profits divided in specified proportions between the farmers and the firm, imports a bailment and not a sale, especially when practically so construed by the parties through selling the manufactured products in the name of the Farmers' Company by the firm as agents.

3. Bailors Entitled to Property as against Bailee's General Assignee. The original owners of produce delivered by them under such contract of bailment retain exclusive title thereto until the contract is fully executed, and are therefore entitled to the produce and its products, manufactured or unmanufactured, in the factory at the time of the making of a general assignment by the bailee; and the latter has no such title thereto as will enable him or his assignee to maintain an action against the original owners for a conversion of the property.

*Sattler* v. *Hallock*, 15 App. Div. 500, affirmed.

(Submitted June 21, 1899; decided October 3, 1899.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered April 10, 1897, affirming a judgment in favor of defendants entered upon the verdict of a jury, and also affirming an order denying the plaintiff's motion for a new trial made upon the minutes of the trial court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John E. Brodsky* for appellant. The contract in question is an executory contract of sale, and the title to the merchandise or produce was completely vested in Meierdiercks & Sons, upon its delivery at the Smithtown factory. (2 Kent's Com. 468, 558; *Smith* v. *Clark*, 21 Wend. 83; *Norton* v. *Woodruff*, 2 N. Y. 153; *Cooke* v. *Millard*, 5 Lans. 243;

*Anderson* v. *Read*, 106 N. Y. 333; *Smith* v. *N. Y. C. R. R. Co.*, 4 Keyes, 180; *Cooke* v. *Millard*, 65 N. Y. 352; *Burrows* v. *Whitaker*, 71 N. Y. 291; *Burt* v. *Dutcher*, 34 N. Y. 493; *Dwight* v. *G. L. Ins. Co.*, 103 N. Y. 341; *Schoonmaker* v. *Hoyt*, 148 N. Y. 425.) The learned trial justice erred in denying the plaintiff's motion at the close of the case to direct the jury to find a verdict for the plaintiff, except as to the question of damages. (*Bagley* v. *Bowe*, 105 N. Y. 171; *Rouse* v. *Lewis*, 4 Abb. Ct. App. Dec. 121; *Dwight* v. *G. L. Ins. Co.*, 103 N. Y. 358; *Hutchins* v. *Hutchins*, 98 N. Y. 56; *McLewee* v. *Hall*, 103 N. Y. 639; *Willson* v. *Law*, 112 N. Y. 536; *Shearman* v. *Henderson*, 12 Hun, 170; *Kelly* v. *Frazier*, 2 Civ. Pro. Rep. 322.) The learned trial justice erred in denying plaintiff's motion to set aside the verdict and for a new trial upon the exceptions taken and because the verdict is contrary to evidence and contrary to law. (*Ferguson* v. *Gill*, 74 Hun, 566; *Reid* v. *Young*, 7 App. Div. 400; *Lanslois* v. *Hayward*, 36 N. Y. S. R. 59; Hirsch on Juries, § 530; Wells on Questions of Law & Fact, §§ 2, 3; *Dunlop* v. *Patterson*, 5 Cow. 243; *Allis* v. *Leonard*, 58 N. Y. 288; *Cunningham* v. *Magoun*, 18 Pick. 93.)

*Ackerly & Miles* for respondents. The Long Island Farmers' Company never parted with the title to the produce which was delivered at the factory in accordance with the terms of the contract, because the contract is one of bailment and not of sale. (*Ripley* v. *Larmouth*, 56 Barb. 21; *R. R. Co.* v. *R. R. Co.*, 44 Ohio St. 287; *Hill* v. *Miller*, 76 N. Y. 32; *Miller* v. *H. & S. J. R. R. Co.*, 24 Hun, 607; *Clark* v. *Woodruff*, 83 N. Y. 518; *Leeds* v. *M. Ins. Co.*, 8 N. Y. 351; *Harper* v. *A. M. Ins. Co.*, 17 N. Y. 194; *Mallory* v. *Willis*, 4 N. Y. 76; *Foster* v. *Pettibone*, 7 N. Y. 433; *Stewart* v. *Stone*, 127 N. Y. 500; *Mack* v. *Snell*, 140 N. Y. 193.) In the event that the court should feel unable to say, as a matter of law, that the contract in question was one of bailment, it must then hold that there exists in the terms thereof a latent ambiguity in that regard. (*Jackson* v. *Sill*, 11 Johns. 215.)

If the contract under consideration was ambiguous, then it became proper, in aid of its true construction, to resort to the surrounding facts and circumstances as they existed when the contract was made; and to consider the practical construction which the parties themselves had given it. In this way, but in no other, was a question of fact presented for the jury as to what was the intention of the parties. (*Kenyon* v. *K. T. & M. M. A. Assn.*, 122 N. Y. 254; *White* v. *Hoyt*, 73 N. Y. 505; *Woolsey* v. *Funke*, 121 N. Y. 88; *Nicoll* v. *Sands*, 131 N. Y. 24; *Bowman* v. *A. Ins. Co.*, 59 N. Y. 521; *Streppone* v. *Lennon*, 143 N. Y. 626; *E. Nat. Bank* v. *Kaufmann*, 93 N. Y. 273; *Dodge* v. *Zimmer*, 110 N. Y. 43; *Tilden* v. *Tilden*, 8 App. Div. 99; *Schmittler* v. *Simon*, 114 N. Y. 176.) A new trial should not be granted because the decision arrived at was correct and just, and the plaintiff was not prejudiced by any error of the court upon the trial. (*Quincey* v. *White*, 63 N. Y. 370.)

MARTIN, J. On the twenty-first day of February, 1895, twenty-five farmers, residents of the town of Smithville, L. I., were the owners of a building or premises used as a pickle factory, situated in that town. On that day they entered into a written agreement with the firm of John A. Meierdiercks & Sons, in relation to the production, manufacture and sale of pickles, sauer kraut and other like products.

So far as material to the question involved, the contract was substantially as follows: The parties agreed to organize a responsible company or corporation for the purpose of conducting or aiding in the production and manufacture of the articles referred to in the contract. It then provided that the farmers were to prepare and deliver to the plaintiff's assignors at the factory, pickles, cabbage, dill, &c., to be raised upon an acreage which was given, and at prices stated therein. If the building proved insufficient, the farmers were to provide an additional one at a cost not to exceed three hundred dollars, to be paid by the assignors and deducted from the net profits at the end of the season, they guaranteeing that such profits

should amount to at least that sum. If they were more than the cost of the building, then the farmers were to receive twenty per cent thereof, to be divided between them according to the amount of produce furnished by each. The assignors were to take the pickles, cabbage and other produce, pay the prices named at the times and in the manner stated, furnish the labor, machinery, barrels, tanks, salt, spices and other necessary material, and pay the freight and cartage. These expenses were to be deducted from the gross receipts of the sales of the pickles, sauer kraut and other goods so manufactured. A list was then given of the number of acres of each kind of produce which was to be furnished by each of the twenty-five farmers named. To receive products at the factory, the assignors were to furnish one man and the farmers another, who were to attend to their reception and decide all matters of dispute in relation to them. The representative of the farmers was to be given full and complete data of all the produce delivered and all barrels, salt, spices and utensils furnished and all the goods of every description received and shipped by the assignors, so as to show the gross receipts and expenses for the year. The agreement then provides: "The manufacture and sale of all the products *of the Long Island Farmers' Co.* shall be done by J. A. Meierdiercks & Sons. * * * It is hereby agreed by the undersigned of the Long Island Farmers' Company that at any time should the business of the Long Island Farmers' Company cease and the property, including buildings, utensils, bbls., &c., be sold or bartered, the members of the Long Island Farmers' Company other than J. A. Meierdiercks & Sons, guarantee to J. A. Meierdiercks & Sons 35 per cent of the amount realized." This agreement was signed by the twenty-five farmers mentioned and by the plaintiff's assignors.

Subsequently the Long Island Farmers' Company was organized in accordance with the contract. By-laws were passed, and the defendants were elected as its managing officers. Soon after the execution of the contract, the plaintiff's assignors went to the factory, proceeded to manufacture

the produce which was delivered under it, and continued that business until they made a general assignment to the plaintiff. The keys of the factory were retained by and continued in the possession of a representative of the farmers who, after the produce was delivered at the factory and manufactured, shipped it to various purchasers. During the continuance of this business, the executive officers of the Farmers' Company, or some of them, were usually present at the factory and engaged in looking after the business there transacted. They gave directions, passed judgment upon the quality of the produce, and were often consulted by the assignors' representative in regard to affairs connected with the business. Although the manufactured products were sold by the plaintiff's assignors, they were billed "J. A. Meierdiercks & Sons, Agents Long Island Farmers' Company." These bills were sent and checks, drawn to the order of the company, were received, when the assignors requested the committee of the company to give them a power of attorney to indorse them, which it refused to do.

On the seventeenth of September, 1896, the firm of John A. Meierdiercks & Sons made a general assignment to the plaintiff for the benefit of its creditors. Subsequently the plaintiff went to the factory at Smithtown and demanded all the products manufactured and unmanufactured, claiming that they were owned by the assignors at the time of the assignment and were a part of the assets of that firm. With this demand the managers of the company refused to comply, claiming that by the terms of the agreement the company and the farmers it represented were the lawful owners of such products. This action was to recover their value at the factory at the time of the assignment upon the ground that the defendants had wrongfully converted them to their own use. The defendants alleged title in the Long Island Farmers' Company, and that they, as its representatives, were entitled to the possession of the property.

Thus it is obvious that the single question involved is whether, under the contract between the parties, the title to

the property in suit vested in the plaintiff's assignors and was transferred to him by the assignment, or whether it remained in the Farmers' Company or the farmers furnishing it.

On the trial the court held that the contract imported a sale, but submitted to the jury the question whether, under the facts and circumstances proved, including the acts of the parties, the contract had been substantially altered, so that the title rested in the defendants or the company or persons they represented. The jury found for the defendants. The Appellate Division, however, held that the evidence was not sufficient to justify the submission of that question to the jury, but that the contract between the parties was one of bailment, or partnership, and not of sale, and, hence, the plaintiff was not entitled to recover, and judgment for the defendants was properly rendered.

With this situation it is obvious that the determination of the courts below can be sustained only in case the transaction between the parties was a bailment or joint enterprise. If it was a bailment, manifestly the defendants were entitled to retain the possession of the property. If it was a joint enterprise the plaintiff could not recover in an action for the conversion of the property, as the defendants were entitled to its possession, as against the plaintiff, until the matters arising under the contract were adjusted. We fully agree with the learned Appellate Division that there was no evidence to justify the trial court in submitting to the jury the question of an alteration or modification of the original agreement. Therefore, the real question we are called upon to decide is whether the agreement of the parties imported a sale of the property to the plaintiff's assignors. If it did, and the title passed, then the plaintiff is entitled to recover. If not, then the judgment is right and should be affirmed.

In the construction of contracts, where there is no ambiguity, it is the duty of the court to determine their meaning. Moreover, where the terms and language of the contract are not disputed, its legal effect is a question of law to be determined by the court. It is always the duty of a court, in con-

38

struing a written instrument, if possible, to ascertain the intention of the parties; and in order to determine its proper construction resort must be had to the instrument as a whole, and effect must be given to every clause and part thereof when it can be done without violence. (*Ripley* v. *Larmouth,* 56 Barb. 21.)

With these principles in mind, we approach the question whether under the provisions of this contract, the plaintiff's assignors were bailees of the property, or whether the contract was one of purchase and sale.

One of the distinctions between a bailment and a sale is correctly pointed out in the dissenting opinion of BRONSON, Ch. J., in *Mallory* v. *Willis* (4 N. Y. 76, 85), as follows: "When the identical thing delivered, though in an altered form, is to be restored, the contract is one of bailment, and the title to the property is not changed." (*Foster* v. *Pettibone,* 7 N. Y. 435.)

There are, however, other principles applicable to the question. Thus, when property in an unmanufactured state is delivered by one person to another, upon an agreement that it should be manufactured or improved by his labor and skill, and when thus improved in value should be divided in certain proportions between the respective parties, it constitutes a bailment, and the original owner retains his exclusive title to the property until the contract is completely executed, although the labor to be performed by the bailee may be equal or even greater in value than that of the property when received by him. (BEARDSLEY, J., in *Gregory* v. *Stryker,* 2 Denio, 631.)

Again, the relation is that of bailor and bailee, where the property is thus delivered to be manufactured or improved, and afterwards there is to be a sale and a return or a division of the proceeds. (*Stewart* v. *Stone,* 127 N. Y. 500.)

In *Hyde* v. *Cookson* (21 Barb. 92) there was a written agreement between the plaintiffs and one Osborn in relation to tanning a quantity of hides. The hides were to be furnished by the plaintiffs on a commission of five per cent for buying and six per cent for selling the leather. Osborn was to take the hides to his tannery, manufacture them into hem-

lock sole leather and return it to the plaintiffs, who were to sell it in their discretion. When sold, the account was to be made up, and the net proceeds of the sales, after deducting the cost of hides, commissions, interest, insurance and other expenses were to be the profit or loss to accrue to Osborn in full for tanning the hides, and it was held that this was not a contract of sale, but of bailment, and that the title remained in the plaintiffs.

In *Pierce* v. *Schenck* (3 Hill, 28) logs were delivered at a sawmill under a contract with the person running the mill that he would saw them into boards and that each party should have one-half. It was held that the transaction was a bailment ; that the bailor retained his general property in the logs until they were all manufactured in pursuance of the contract, and that, as between the parties, the bailee acquired no interest in any of the boards manufactured by mere part performance within the time.

In *Mallory* v. *Willis* (4 N. Y. 76) the plaintiffs agreed to deliver merchantable wheat at a flour mill carried on by the defendant to be manufactured into flour. The defendant agreed to deliver one hundred and ninety-six pounds of superfine flour, packed in barrels to be furnished by the plaintiffs, for every four bushels and fifteen pounds of wheat. He was to be paid sixteen cents per barrel, and two cents extra in case the plaintiffs made one shilling net profit on each barrel of flour. The defendant was to guarantee the inspection. The plaintiffs were to have the offals or feed which the defendant was to store until sold. This court held in that case that the contract imported a bailment and not a sale. The doctrine of that case was indorsed in *Foster* v. *Pettibone* (7 N. Y. 433).

In *Mack* v. *Snell* (140 N. Y. 193) the parties entered into a contract by which the plaintiff agreed to manufacture for the defendant one thousand pairs of pruning shears, to be in all respects like a sample furnished, the defendant to furnish the rough castings for the handles and the plaintiff to furnish the blades. It was held that the contract was one of bailment and not of purchase and sale, so that the title to the shears manufactured was at all times in the defendant.

Applying these principles to the contract under consideration, we think it is quite obvious that it was one of bailment and not of purchase and sale. Under its terms the parties represented by the defendants were to furnish certain specified amounts of farm produce which was to be delivered at a factory owned by them and manufactured into pickles, sauer kraut and other similar articles. It was to be received jointly by a representative of the plaintiff's assignors and a representative of the farmers. The plaintiff's assignors were to pay the prices named for the produce furnished, to furnish the labor, machinery and materials, such as salt, spices, barrels and other necessary articles and utensils, and to pay the freight and cartage. The amount thus expended was to be deducted from the gross receipts of the sales of the articles manufactured, and the representative of the farmers was to be furnished with a full account of all of the transactions connected with the business. The manufacture and sale of the products of the Long Island Farmers' Company were to be done and made by the plaintiff's assignors, and the net proceeds were to be divided by paying twenty per cent to the farmers, or for their benefit, and the assignors to have eighty per cent. Thus the produce was to be furnished by the persons represented by the defendants, was to be manufactured by the plaintiff's assignors, to be sold as the products of the Long Island Farmers' Company, and the net profits divided. The raw material, which was owned by parties the defendants represent, was delivered to the plaintiff's assignors to be improved by their labor and skill. It was then to be sold and the net value divided in the proportions named. So that, clearly within the principle of the *Gregory* and other kindred cases, the owners of the produce thus delivered retained their title to the property until the contract had been completely executed, and this without regard to the value of the labor performed upon it by the plaintiff's assignors as such bailees. We think when this entire contract is examined and understood it clearly imports a bailment and not a sale.

It is also quite manifest that the parties understood such to

be the nature of the agreement between them. This is shown by the facts that the property, after it was manufactured, was shipped from the factory by the company; that the plaintiff's assignors, acting under this contract, in selling the manufactured produce, caused the bills to be sent to purchasers in the name of the company with their names thereon as agents; that checks were taken therefor drawn to the order of the company in accordance with the bills sent; that the assignors asked for a power of attorney authorizing them to indorse the same; that the representatives of the farmers were present at the factory, and that they gave directions as to the management of the business there carried on. All these facts tend to show with convincing certainty that the plaintiff's assignors, as well as the other parties to the contract, understood it to be one of bailment, where the property was to be furnished by the latter, improved by the former, and the net profits divided.

If this contract is to be regarded as somewhat indefinite or ambiguous, we may resort to the surrounding facts and circumstances as they existed when it was made to aid us in its interpretation and also consider the practical construction which the parties have given it. Its interpretation by them is a consideration of importance. As was said by SWAYNE, J., in *Insurance Co.* v. *Dutcher* (95 U. S. 269, 273): "The construction of a contract is as much a part of it as anything else. There is no surer way to find out what parties meant, than to see what they have done." (*Woolsey* v. *Funke*, 121 N. Y. 87.)

It follows from the conclusion we have reached as to the character of the contract and the relation existing between the parties that the judgment must be affirmed, as the agreement between them constituted a bailment of the property in question, and the plaintiff's assignors acquired no such title as would enable them to maintain an action for its conversion.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.