# Farrow *v.* Wooley & Jordan.

## *Trover and Trespass.*

(Decided Feb. 14th, 1907. 43 So. Rep. 144.)

1. *Agriculture; Liens; Contract of Hire; Crops.*—Where one party furnishes the land and teams and the other party the labor with an agreement to divide the crops between them a contract of hire exists under Section 2712, Code 1896, and the title of the crops are in the owner of the soil, while the laborer has his lien for his share of the crops.

2. *Trover and Conversion; Right of Action; Title of Plaintiff; Assignment of Lien.*—The assignee of the lien of the party furnishing the labor acquires no title that will support trover or conversion for part of the crop.

3. *Same; Evidence; Admissibility.*—Testimony tending to show that the owner of the crop said he would see the debt of the laborer paid was admissible as a circumstance tending to corroborate the assignee of the laborer's lien that the owner did afterwards deliver and turn over the laborer's cotton to him in payment of the laborer's debt.

4. *Same; Right of Action; Title of Plaintiff.*—Where the owner of the crop and the laborer divided the crop in accordance with the terms of the contract, and the part assigned to the laborer was delivered to the assignee of the laborer's lien in payment of the mortgage to them such assignee were entitled to maintain trover for taking the crop by a third person.

5. *Same; Evidence; Admissibility.*—Testimony that the owner of

[Farrow v. Wooley & Jordan.]

the crop told the assignee of the laborer's lien to go and get the cotton for the payemnt of their claims against the laborer was admissible as tending to show that the owner had relinquished his right to the cotton and turned it over to such assignees, or to the laborer.

6. *Same.*—It was competent to show by plaintiff that after the cotton had been taken from plaintiff and placed in defendant's warehouse that the owner of the crop said to plaintiff that plaintiff's bales of cotton were in the warehouse, as a circumstance tending to show that he considered that the cotton had been delivered to plaintiff under the mortgage.

7. *Appeal; Proceeding in Lower Court; Scope of Issues on New Trial; Theory of Action.*—The fact that a case was tried upon a different theory on a former hearing, did not deprive plaintiff of the right to prove anything material to the controversy on the present trial, where the property sought to be recovered was in possession of the defendant at the time of the institution of the suit, and was afterwards sold by his employe.

8. *Trover and Conversion; Title of Plaintiff.*—Where the cotton was raised under a crop contract by one furnishing the lands and teams and the other the labor, and such cotton was delivered by both parties to the contract to plaintiff for credit upon the account of the laborer, the plaintiff is entitled to maintain trover for the conversion of such cotton; and a delivery is shown when the evidence discloses that the owner and the laborer each directed one of the plaintiff's to get the cotton and apply it to the laborer's account.

9. *Same; Instructions.*—A charge is correct which asserts that, in determining whether the cotton was delivered to plaintiffs' the jury must look to all the evidence, and if they are reasonably convinced that the owner directed one of the plaintiffs to get the cotton, then the title to same passed to plaintiffs.

10. *Same.*—A charge asserting that when the cotton was ginned it belonged solely to the owner of the crop, and that before plaintiffs can recover they must prove that they bought it from the owner, and the burden of proving this with reasonable certainty is on the plaintiffs, is incorrect and properly refused.

APPEAL from Marshall Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by Wooley & Jordan against T. L. Farrow. From a judgment in favor of plaintiffs, defendant appeals. Affirmed.

The subject of the controversy, together with all the facts necessary to an understanding of the opinion, suf-

ficiently appear from the opinion. A number of charges were asked and refused to the defendant, but the only one necessary to be here set out is charge 6, and is as follows: "The court charges the jury that at the time this cotton was ginned it belonged solely to John P. Tillman, and before the plaintiffs can recover they must prove that they bought this cotton from Tillman, and the burden of proving this with reasonable certainty is upon the plaintiff."

The following charges were given at the request of the plaintiff: "(A) The court charges the jury that the fact that this case was tried heretofore on a different claim of title cannot be looked to by the jury for the purpose of discrediting the claim of title set up by plaintiffs in this trial. Plaintiffs may set up different claims to the cotton involved in this suit. (B) The court charges the jury that if they find from the evidence that the four bales of cotton after being ginned had been divided, Tillman taking two and Pratt the other two, and said division had been made before Jordan got the bales in controversy, and the bales obtained by Jordan were the bales set apart to Pratt, then the title to said Pratt bales was in Pratt, and his delivery of them to Jordan for the account of Wooley & Jordan against him vested the legal title to said cotton in Wooley & Jordan. (C) The court charges the jujry that if the cotton in controversy was delivered by Pratt and Tillman to Jordan, for credit on an account of Wooley & Jordan against Pratt, or Pratt and Tillman, then they must find for the plaintiff; and such delivery need not have been made by Pratt and Tillman. It is sufficient if they directed Jordan to get said cotton and apply it on said account. (D) The court charges the jury that in determining whether or not the two bales of cotton in controversy were delivered to Wooley & Jordan, or to Jordan for Wooley & Jrdan, by said Tillman, they must look at all the evidence in the case; and if, from all the evidence in the case, they are reasonably convinced that Tillman directed Jordan to get the two bales of cotton, then the title to said cotton passed to Wooley & Jordan."

There was judgment for plaintiff, and defendant appeals.

[Farrow v. Wooley & Jordan.]

STREET & ISBELL, for apellants.—Confessedly, the cotton sued for at one time belonged to one Tillman under whom defendant held.—*Jordan v. Lindsay,* 132 Ala. 567; *Farrow v. Wooley,* 138 Ala. 267. It is clear that whatever right plaintiff acquired by the agreement was not sufficient to pass to them the entire legal interest.— *Foley v. Felrath,* 98 Ala. 180. Under the familiar doctrine of recaption Tillman had a right to retake the property and place it for safekeeping until the respective rights could be adjusted.—*Thomas v. Adams,.* 2 Port. 188; *Motes v. Bates,* 74 Ala. 374; *Street v. St. Clair,* 71 Ala. 110. Counsel discuss other assignments of error but cite no authority.

E. O. McCORD, for appellee.—No brief came to the reporter.

SIMPSON, J.—This was an action by the appellee against the appellant; one count being in trover and the other trespass for taking two bales of cotton. The facts are that one Tillman furnished the land and team, and Pratt furnished the labor, to make a crop, and they were to divide the crop in equal proportions. This, according to our statute, was a contract of hire, under which the crop belonged to Tillman and Pratt had a lien on it "for the value of the portion of the crop to which he was entitled."—Code 1896, § 2712. The plaintiffs made advances to said Pratt during the year 1898, and he executed to them an instrument intended to be a mortgage on his interest in said crop. Under section 2712 of the Code of 1896 the contract of hire existed between the parties. What was the effect, then, of the mortgage made by Pratt, Said section provides that "such lien shall have the same force and effect, and shall be enforced, in the same manner, and under the same conditions, and in the same cases as the lien, in favor of a landlord."

Under the landlord's lien statute, as it originally stood, this court held that, as the landlord merely had a lien on the crop of his tenant, which was not the subject of assignment or transfer to another, he did not have any title or interest in the crop which could be the

subject of a valid mortgage (*Broughton v. Powell*, 52 Ala. 123); also that the statutory right of enforcement by attachment could not be available to an assignee of the landlord (*Foster v. Westmoreland*, 52 Ala. 223). Subsequently the statute was amended so as to permit the assignment of the landlord's lien, clothing the assignee with all of the landlord's rights.—Code 1896, § 2706. Under this statute it results that when a landlord attempts to make a mortgage on the crop of his tenant, while it cannot operate as transfer of the legal title, which he has not, it does operate as an assignment of his lien, and clothes the assignee with the same rights and remedies as the landlord had.—*Leslie v. Hinson*, 83 Ala. 267, 3 South. 443; *Ballard v. Mayfield*, 107 Ala. 396, 18 South. 29. The statute does not transform the equitable lien of the landlord into a legal title, and the fact that he can maintain a claim suit on it is only by virtue of the statute, which has been amended so as to allow the holder of an equitable title "or lien" to maintain that particular form of action.—Code 1896, § 4141. Accordingly this court has held that the statutory lien of the hireling will not support the action of trover.— *Jordan v. Lindsay*, 132 Ala. 567, 31 South. 484. The mortgage could not amount to anything more than an assignment of the lien held by Pratt. Consequently the plaintiff could not maintain the action of trover or trespass on any title acquired by the mortgage, although, as will be shown hereafter, a different question would arise if the crop had been divided and the cotton delivered to him in payment of his lien.

The testimony that Tillman said he would see the debt paid was admissible as a circumstance tending to corroborate the testimony of the plaintiff that Tillman did afterwards turn the cotton over to them for the payment of the debt. One of the plaintiffs further testified that after the cotton was ginned, and while it was at the gin, said Pratt told them to go and get the cotton and apply it to their mortgage. This testimony was objected to by the defendant, and, without more, would be incompetent, as Pratt did not have the title to the cotton and could not authorize the defendant to take it unless he had acquired it from Tillman. But the plaintiff

proceeded to testify (and he is corroborated by other witnesses) that about the same time Tillman told him that "there were four bales at the gin, two of which were marked 'J. T.' and two marked 'N. P.,' and told Jordan to go and get the two bales marked 'N. P.' and pay themselves out of them what Pratt was owing them." This testimony was contradicted; but, if true, it might authorize the jury to believe that the cotton had been divided, and the two bales marked "N. P." assigned to Pratt, and if both Pratt and Tillman united in authorizing Jordan, for his firm, to take possession of the cotton and pay their debt out of it, that was a deliverey to the plaintiffs, either as bailees or as vendees, for the purpose of selling the cotton and out of the proceeds to pay their own debt and account for the overplus to Pratt. Jordan went and got the two bales marked "N. P." and placed them in the rear of his store in Guntersville. Subsequently Tillman took the bales, over the protest of plaintiffs, and placed them in the warehouse of defendant. Plaintiffs notified defendant that they had a mortgage on the cotton, and said cotton was in defendant's hands at the time of the commencement of this suit. Tillman claims that he has a lien on Pratt's part of the cotton for advances to the amount of $56, also denies that the cotton had ever been divided and so marked with his consent, and denies that he authorized plaintiffs to get the cotton.

There are conflicts in the testimony for the determination of the controversy by the jury. It matters not whether the transaction by which the cotton was delivered to the plaintiffs created a bailment, or amounted to a sale, although the former seems to be the case.— *Sattler v. Hallock,* 160 N. Y. 291, 54 N. E. 667, 46 L. R. A. 679, 73 Am. St. Rep. 686. In either case the plaintiffs would be authorized to maintain an action for the taking or conversion of the property. Unquestionably Tillman and Pratt together had a right to dispose of that property in any manner that they might choose, and if it was divided and the two bales turned over to Pratt, and by the concurring act of both delivered to the plaintiffs, to be by them sold and appropriated to the payment of their debt, it had passed beyond the control

of both Tillman and Pratt. Tillman might have refused to pay it over until the amount due him for advances was paid; but, having paid it over, the law gave him no lien for advances. Pratt simply had the right to demand that the cotton be fairly sold, and, if there was any overplus, to have it paid to him. If, on the other hand, there was no division of the cotton, no payment to Pratt of his part, and no delivery by Tillman and Pratt to the plaintiffs for the payment of their claim, then the cotton remained the property of Tillman, and the plaintiffs could not recover. It is true that if the plaintiffs were the bailees, and used the property in any way contrary to the terms of the bailment, the bailor would have a right to recover his property; but, if the property was divided, Pratt was the bailor, and not Tillman. However that may be, if it was delivered to them, to be sold and applied to the debt of Pratt, they had a right to keep it on their premises for a reasonable time until the sale could be effected; and they committed no wrong in declaring that Tillman had no interest in it.

From what has been said it will appear: (1) That the court did not err in allowing the witness to testify that Tillman said he would see Pratt's debt paid. (2) There was no error in allowing proof that Tillman told Jordan to go and get the cotton, as that was proper, as tending to show that Tillman had relinquished his right and turned the cotton over to Pratt. (3) Nor was there error in permitting Jordan to testify that, after the cotton had been taken from plaintiffs and placed in defendant's warehouse, Tillman said to him, "Your two bales of cotton are in the warehouse," as that was a circumstance going to show that Tillman considered that the property had been turned over to Jordan, as he claims. (4) There was no error in the giving of charge A, on request of the plaintiffs. The fact that the case was previously tried on a different theory could not deprive the plaintiffs of the right to prove anything material to their controversy in this case. No principle of estoppel is shown, as the evidence shows the cotton was in the possession of the defendant at the time of the institution of this suit, and has since been sold by his employe.

[C. W. Zimmerman Mnfg. Co. v. Daffin.]

(5) From what has been said, it will be seen that there was no error in the giving of charge B at the request of the plaintiffs. (6) Charge C is not subject to the criticism insisted upon by the appellant. (7) Charge D was properly given. (8) As there was a conflict in the evidence, there was no error in the refusal to give the general charge in favor of defendant.

The only other charge referred to in the brief of appellant is charge 6, requested by the defendant and refused. There was no error in the refusal to give this charge. Although the cotton did belong to Tillman at the time it was ginned, yet it does not follow that the only way in which plaintiffs could have acquired the cotton, or such an interest in it as to entitle them to recover, was by a purchase from Tillman. Tillman may have divided the cotton and paid these two bales over to Pratt, and Pratt may have turned it over to the plaintiffs, with Tillman expressing his consent, by way of giving assurance that he had relinquished all right to it ;and, if these be the facts, the plaintiffs could recover.

The motion for a new tral was properly overruled. There is no error in the record, and the judgment of the circuit court will be affirmed.

Affirmed.

TYSON, C. J., and HARALSON and DENSON, JJ., concur.