# Tate *v.* Cody-Henderson Co.

## *Detinue.*

(Decided November 19, 1914.  66 South. 837.)

1. *Detinue; Persons Entitled to Sue.*—Where one party furnishes the land and stock, and the other party furnishes the labor with which to make the crop, with an agreement for an equal division of the crop, the parties are either tenants in common, or the relation of landlord and tenant exists, and one party may not maintain detinue against the other party for a part of the crop.

2. *Contracts; Constructions; Intention.*—In determining the character of the contract the court will look to its purpose, and seek to ascertain the intention of the parties by resorting to construction, when necessary to give effect thereto.

3. *Same; Meaning of Words; Parol Evidence.*—Where meaning of words in a contract, or their application to the particular circumstance, is in doubt, resort may be had to parol evidence to show the real meaning.

4. *Same.*—Where the contract provides that a party thereto shall have the use of mules, wagon and corn for a year and cultivate a certain tract of land on halves, and that the other party shall receive a half of the crop for the year, and that the stock shall remain the property of the party furnishing them, but makes no provision as to what shall be done by either in furnishing the other things not specified in the contract but essential to a completion thereof for the production of a crop, such contract is ambiguous, and parol evidence of the situation and surrounding of the parties, and their subsequent conduct becomes admissible under the rule that ambiguities on the face of an instrument makes it permissible to show by parol evidence, the situation and surrounding circumstances, and the subsequent conduct of the parties so as to ascertain their meaning and give effect to their intention.

5. *Statutes; Construction; Legislative Intent.*—In construing statutes the courts look to and seek to ascertain the legislative intent and give effect thereto.

6. *Agriculture; Contract of Hire; Team; Lien.*—A contract providing that a party is to have the use of mules, wagons and corn for a year and cultivate a tract of land on halves, and the other party shall have and receive half of the crop for the use of the land and the stock, which stock shall remain the property of the party furnishing it, is not a contract of hire within the meaning of section 4743, Code 1907, since the word, "team" as used in the statute has reference not only to the live stock used in making the crop, but also includes plows, harness, gears, etc., necessary for use in connection with the stock in producing the crop.

[Tate v. Cody-Henderson Co.]

APPEAL from Crenshaw Circuit Court.

Heard before Hon. A. E. GAMBLE.

Detinue by the Cody-Henderson Company against J. C. Tate, in which W. H. Tate intervenes as claimant. Judgment for plaintiff and claimant appeals. Reversed and remanded.

POWELL & HAMILTON, for appellant. Under the issues the burden was on plaintiff to prove that the title to the property was in plaintiff, and that plaintiff was entitled to immediate possession.—*Hensley v. Orendorf,* 152 Ala. 604; *Shows v. Brantley,* 127 Ala. 354; *Kyser v. Maas,* 111 Ala. 394; sec. 3792, Code 1907. The burden was on defendant to show that J. C. Tate was in possession of the property involved at the time of the commencement of the suit, and that plaintiff had the legal title and immediate right of possession.—*Shows v. Brantley, supra; Graham v. Myers,* 74 Ala. 432. Under the agreement, the relation of hire between plaintiff and J. C. Tate did not exist under section 4743, Code 1907, but they were either tenants in common or landlord and tenant.—*Hendrix v. Clemmons,* 147 Ala. 590; *Hunt v. Matthews,* 132 Ala. 286; *Haynes M. Co. v. Bell,* 163 Ala. 326; *Bayne v. Hodges,* 4 Ala. App. 423. Such being the relation, neither could maintain detinue against the other.—*Smith v. Rice,* 56 Ala. 417. The court improperly sustained objections to the question seeking to show the relationship between the parties, and the facts and circumstances surrounding them when the contract was made, and their conduct relative thereto.—*W. T. Smith L. Co. v. Jernigan,* 64 South. 300; 2 Page on Contract, secs. 1123-26. The court should have given charge 3.— Authorities supra.

FRANK B. BRICKEN, for appellee. The contract and the evidence create the relation of laborer and hirer be-

tween J. C. Tate and the Cody-Henderson Company within the purview of section 4743, Code 1907, and appellee had the legal title to the crops raised on its land, and of course, could maintain detinue therefor.—*Farrow v. Wooley*, 138 Ala. 267; *Hunt v. Mathews*, 132 Ala. 286; *Jordan v. Lindsey*, 132 Ala. 567; *Gill v. State*, 124 Ala. 73.

PELHAM, P. J.—The Cody-Henderson Company (appellee) brought suit in detinue against one J. C. Tate to recover, among other things, 6 bales of cotton and 500 bushels of corn. The writ was executed by levy-ing upon 4 bales of cotton and 160 bushels of corn as the property of J. C. Tate. After the levy was made, W. H. Tate, the appellant, made claim to 2 bales of the cotton and 80 bushels of the corn levied on. The claim suit was tried, resulting in a judgment for plaintiff, from which this appeal is prosecuted.

J. C. Tate, the father of W. H. Tate, the claimant in the court below, being indebted to the Cody-Henderson Company, in order to pay or satisfy his indebtedness, sold to the Cody-Henderson Company certain personal property, including 2 mare mules, 1 two-horse wagon and harness, and 75 bushels of corn, which personal properly, together with 40 acres of land, had previously been conveyed to the Coody-Henderson Company by J. C. Tate and wife and accepted in payent of J. C. Tate's indebtedness to the Cody-Henderson Company by that company.

The contract or arrangement of sale of the personal property between the parties above referred to was in writing, dated February 3, 1913, and contained the following provisions:

"It is agreed and understood that J. C. Tate is to have the use of the mules, wagon, and corn for the year 1913.

and is to cultivate the said 40 acres on halves, the said Cody-Henderson Company receiving one-half of all crop or crops made for the year 1913, for the use of the land and stock above mentioned, said stock remaining the property of the said Cody-Henderson Company."

After the above agreement had been made, J. C. Tate, according to the testimony of himself and his son, transferred his interest in the same to his son, W. H. Tate, and W. H. Tate is shown to have made a crop on the Cody-Henderson Company place during the year 1913, under the terms of the agreement made by his father, J. C. Tate, with the Cody-Henderson Company, but there is little, if any, evidence to show that the Cody-Henderson Company knew anything of the transfer by J. C. Tate to his son, W. H. Tate. The evidence is without conflict that the property claimed by W. H. Tate was grown on the Cody-Henderson Company place during the year 1913, and that W. H. Tate lived with his father during that year.

The appellee's right of recovery in the court below rested, primarily, on the written contract between the parties above set out, being declared a contract of hire under section 4743 of the Code of 1907, providing that, when one party furnishes the land and the team to cultivate it, and the other party furnishes the labor, under an agreement to divide the crop between them in certain proportions, such a relation is established. It would seem from the ruling of the trial court that it adopted this theory in the trial of the case, and held that the legal title to the cotton and corn levied upon and raised on the Cody-Henderson place during the crop year 1913 was in the Cody-Henderson Company, and that the defendant, Tate, had but a mere lien on the property for one-half the amount in value thereof as the measure or proportion of the crop to which he was entitled as his

wage for the year. If the contract can properly be construed as within the terms of the statute (Code, § 4743), then the rulings of the trial court on the cardinal proposition involved on the trial are undoubtedly correct under the rulings of the Supreme Court.—*Willard v. Cox,* 9 Ala. App. 439, 63 South. 781; *Farrow v. Wooley & Jordan,* 149 Ala. 373, 43 South. 144; *Carleton v. Kimbrough,* 150 Ala. 618, 43 South. 817; *Arrington v. State,* 168 Ala. 145, 52 South. 928; *Foust v. Bains Bros.,* 167 Ala. 115, 52 South. 743; *Adams v. State,* 159 Ala. 115, 48 South. 795; *Courtney v. State,* 10 Ala. App. 141, 65 South. 433.

The question of moment is this: Does the contract fix the status of the parties under the provisions of section 4743 of the Code and establish a relation of hire? For, aside from the statute, the contract would not establish such a relation, and legal title to maintain the action would not therefore be in the Cody-Henderson Company, the appellee, as against the claimant, W. H. Tate, the appellant, as they would in such event be either tenants in common, or the relation of landlord and tenant would exist between them.—*Hendricks v. Clemmons,* 147 Ala. 591, 51 South. 306.

In determining the real character of a written contract, courts look to its purpose (*Steele v. State,* 159 Ala. 9, 48 South. 673) and undertake to ascertain and give effect to the intention of the parties by resorting to construction, when necessary, without doing positive violence to the sense of the words used in the instrument (*Marx v. Kilby L. & M. Works,* 162 Ala. 295, 50 South. 136, 136 Am. St. Rep. 24), and in case of doubt in the meaning of the words used, or their application to the particular circumstances, resort may also be had to extrinsic parol evidence to show the real meaning (*Cassells Mill, et al. v. Strater Bros. Grain Co.,* 166 Ala. 274,

51 South. 969). It is the intention of the parties that should govern, and to ascertain this, regard must be had to the nature of the instrument itself, and the condition of the parties executing it, and the objects which they had in view.—*Elec. L. Co. v. Elder Bros.*, 115 Ala. 138, 21 South. 938; *Alexander v. Smith*, 3 Ala. App. 501, 57 South. 104. Ambiguities on the face of the instrument always make it permissible to show by parol the situation, the surrounding circumstances, and the subsequent conduct of the parties for the purpose of ascertaining their meaning and giving effect to their intention.— *Weir v. Long*, 145 Ala. 328, 39 South. 974; *Cross v. Scruggs & Co.*, 115 Ala. 258, 22 South. 81; *Smith v. Webb*, 176 Ala. 596, 58 South. 915, 40 L. R. A. (N. S.) 1191.

The contract shows on its face that the parties to it had in contemplation, as the object in view in making the contract, an agreement between them to provide or contract for making a crop on the place in question for the year 1913; that, in fact, was the subject-matter of the contract. To accomplish this intention and purpose of the parties there is no provision as to what should be done by either in the way of furnishing the other things not specified in the contract that we know, as a matter of common knowledge, are absolutely necessary and essential to a completion and fulfillment of the contract for the production of a crop. The contract, to this extent, is shown on its face to be incomplete and ambiguous. Under the well-known principles of law above stated and authorities cited, parol evidence was therefore admissible to show the situation and surrounding circumstances of the parties and their subsequent conduct with respect to which party did, in fact, furnish these necessary and essential things. Various rulings of the trial court in refusing to permit proof of this na-

ture are assigned as error. In our opinion, these assignments are well taken, and require a reversal of the judgment of the lower court.

It cannot be said that, because the contract provides that one of the parties is to furnish "the mules, wagon, and corn," and is to receive one-half of the crops made in 1913 "for the use of the land and stock above mentioned," the contract, by the terms provided on its face, is brought within that part of the terms of the statute providing that, "when one party furnishes the land and team to cultivate it," etc. (Code, § 4743), the contract of hire between the parties is held to exist. The provision in the contract for the use of the "stock" above mentioned could have reference to nothing else than the aforementioned mules, or possibly, under a broad construction, also a wagon, that one of the parties was to furnish under the terms of the contract, while the statute provides that for the relation of hire to exist the party who furnishes the land must furnish the "team" to cultivate the land.

In arriving at a proper meaning to be accorded to the word "team," as used in this statute, the proper rule of construction would be to look to the intention and motive upon which the Legislature proceeded with respect to the end in view or the purpose designed, rather than to the letter of the law, or the precise word used. "The intention of the lawmaker constitutes the law. A thing may be within the letter of the statute, and not within its meaning, and within its meaning, though not within its letter."—*Atkins v. Disintegrating Co.*, 18 Wall. 272, 21 L. Ed. 841, approvingly quoted in *Cocciola, et al. v. Wood-Dickinson Co.*, 136 Ala. 532, 537, 33 South. 856. The word "team," as generally used in our language, has a broader and more extensive meaning than that given in our dictionaries.—*Finnin v. Malloy*, 33 N. Y.

[Tate v. Cody-Henderson Co.]

Super. Ct. 382, 391. It seems to us that the term "team," as used in the statute under consideration, has reference not alone to the live stock used in making the crop, but as including the plows, harness, gears, etc., necessary to be used in connection with the stock in producing the crop. The statute, in designating that when one party furnishes the land and the team to cultivate the land, and makes provisions with respect to the crop to be produced, while making no provision as to the other party furnishing anything but the labor to produce it, must have in the contemplation of its makers, meant, by the use of the term "team to cultivate it" (the land), not only to include the live stock necessary to that end, but to embrace the idea of whatever equipment was necessary in the way of plows, plow gears, harness, etc., in connection with the live stock, to constitute a "team," in its broad sense, for the purpose of cultivating land and producing a crop. A team embraces the idea of live stock, and could not exist without it, but the term "stock" does not embrace the idea of a team.—*Inman v. Chicago, etc., R. R. Co.,* 60 Iowa, 459, 15 N. W. 286. See, also, as to holdings that the term "team" includes the harness, vehicles, etc., as well as the animal motive power with which they are customarily used, *Krebs Hop Co. v. Taylor,* 52 Or. 627, 97 Pac. 44; *Brown v. Davis,* 9 Hun (N. Y.) 43; *Dains v. Prosser,* 32 Barb. (N. Y.) 290.

The contract entered into by the parties here having been made in reference to a subject-matter covered by a statute, it is supposed to have been made in contemplation of the statute. The contract containing the provision that one party should furnish the mules, wagon, and corn was not sufficient on its face, for the reasons we have discussed, to bring it within the terms of the statute (Code, § 4743) making it a contract of hire

when such party furnishes "the land and the team to cultivate it."

Reversed and remanded.