Nanette Dembitz, J.
This is a proceeding for enforcement of a divorce decree incorporating a separation agreement, and the determination of arrears thereunder. The major dispute arises from the provision for “ bi-monthly ” payments of specified periodic installments for alimony and child support. The parties agree that the word [1] ‘ bi-monthly ’ ’ was a typographical or linguistic mistake, in that payment of the specified amount was intended to be made at shorter intervals than once every two months.
Petitioner ¿rgues that the agreement should be construed to require ‘ ‘ bi-weekly ’ ’ payments of the specified periodic amounts; respondent argues for “ semi-monthly ” installments. The difference between payment of the specified amount every two weeks — that is, '26 payments a year — and payments every half-month, equalling 24 times a year, results in a substantial difference in respondent’s total obligation for the period since the issuance of the decree in 1963 and for the foreseeable future. While respondent called as his witnesses the attorneys who represented both parties at the execution of the agreement seven years ago, they were unable to offer persuasive testimonial or documentary evidence in support of respondent’s position; and on the basis of the entire evidence and the applicable principles of law, the court concludes that petitioner’s contention must be upheld.
The alimony provision reads: ‘[1] The Husband shall pay to the Wife, and the Wife agrees to accept, for her support and mainte *797 nance, the sum of Four Thousand Eight Hundred ($4,800.00) Dollars a year in equal bi-monthly installments of Two Hundred ($200.00) Dollars, each to coincide with the Husband’s pay checks ’ ’.
The provision for child support is similarly worded except that the specified sum per year for the child is $2,400 and the installments are $100. (There is also an escalation clause requiring respondent to pay the petitioner the sum of $225 for each $1,000 he receives in excess of an income of $23,000 per year.)
Petitioner recognizes that bi-weekly installments of $300 for her and the child — that is, 26 payments per year — would result in total yearly payments of $7,800 rather than the $7,200 specified in the agreement. She relies, however, on the provision that the $300 installments were “ to coincide with the Husband’s pay checks ’ ’ and on the conceded fact that such checks were, and indeed continue to be,, bi-weekly.
Respondent’s diligent counsel cites a number of rules of contract construction: That the initial, major clause — here the specification of the yearly sum — prevails over subsequent, subsidiary clauses (see Pittsburg & Shawmut R. R. Co. v. Central Trust Co., 156 App. Div. 182, 189 [1st Dept., 1913]); that contract terms should be construed against the party responsible for them (see Rentways, Inc. v. O’Neill Milk & Cream Co., 308 N. Y. 342, 348), the term “ bi-monthly ” having been suggested, according to respondent, by petitioner’s then attorney; and that an ambiguity should be resolved by the smallest possible verbal change in a provision, which here would mean construing the prefix “ bi ” in the word ‘ ‘ bi-monthly ” as “ semi ’ ’. However, all of these guides to contract construction were formulated merely as aids in the basic judicial task of ascertaining the intention of the parties in the face of ambiguous or inconsistent provisions. (See Matter of Schmith, 19 N Y 2d 398, 402; Sattler v. Hallock, 160 N. Y. 291, 297-298.) None of these rules are controlling if they defeat the intention of the parties; here the court concludes that the intent is so clear from the circumstances of the transaction that the mechanical guides cited by respondent are not determinative.
Unquestionably the clause “ each (installment is) to coincide with the husband’s paychecks,” interpreted as it must be on the basis of extrinsic information,[1] requires bi-weekly payments. It is also conceded that respondent had for a substantial period prior to separation from his wife given her periodic sums for housekeeping expenses on the basis of his receipt of his salary *798 in bi-weekly installments. Petitioner testified that she was at the time of the agreement counting on support of $150 per week for herself and her child, was focusing on the amount she would receive for each of respondent’s pay periods, and failed 'to calculate or realize that the total would then amount to more than $7,200 a year. This uncontradicted testimony accords, as the court judicially notices, with the usual budgetary thinking of housewives, who generally consider their needs in weekly rather than annual terms.
On the basis of respondent’s past dealings with petitioner, he must have been aware of her major focus on his pay periods and on the clause providing for payment to her of $300 with each of his paychecks. The agreement “is to be interpreted in the sense in which the promisor had reason to suppose that it was understood by the promisee.” (White v. Hoyt, 73 N. Y. 505, 511.)
Indeed, respondent’s testimony as well as petitioner’s indicated that both of them tend to focus on current needs and expenses as distinguished from long-range calculations. In the instant agreement, where respondent was obligating himself to make payments coinciding with his paychecks,, it is inferrable that he was concentrating on how much he should retain for himself for each pay period, and that he as well as petitioner were focusing on the payment of $300' bi-weekly rather than on the annual amount.
It is true that for some parties and some types of contracts, the specified total sum of $7,200 a year should be deemed, as respondent argues, to represent the contracting parties’ predominating intent. But the mental set of parties executing a domestic relations agreement — particularly if,, as here, counsel fails to review it with them in all particulars — may differ from that attending, for example, a real estate, sales or employment contract. In interpreting a contract, “we must look to the * * * matters with which it deals, to the circumstances- under which it was made ” (Manson v. Curtis, 223 N. Y. 313, 320); to the character of the contracting parties and of the bargaining process (see Atwater & Co. v. Panama R. R. Co., 246 N. Y. 519, 524; Sattler v. Hallock, 160 N. Y. 291, 301; Yazujian v. J. Rich Steers, Inc., 195 Misc. 694, 700-701).
Respondent has in fact been making bi-weekly payments to petitioner, coinciding with his own bi-weekly paychecks. He testified that a few weeks after the execution of the agreement, he told petitioner in a telephone call that his obligation was only a semi-monthly one, that he would nevertheless continue to make *799 bi-weekly payments, and that he would consider the additional amount accruing as a result of bi-weekly rather than semimonthly payments as an offset to any amounts that might become due under the escalation clause (although in fact no payments became due under that clause in 1963). This testimony goes to confirm the court’s view that respondent at the time of execution regarded his obligation as a bi-weekly one, but on later consideration sought to interpret it differently to his benefit. His unilateral edict to petitioner, when she had no opportunity to consult the agreement or counsel or deliberate on the impact of his remark, could not be deemed a meeting of the minds as to a modification of the agreement; in any event, an oral modification without consideration of a separation agreement is invalid. (See Rehill v. Rehill, 306 N. Y. 126, 131; Moore v. Moore, 140 N. Y. S. 2d 796, 797); G-eneral Obligations Law, § 5-1103.)
The testimony of the attorneys representing the parties at the time of agreement, elicited by respondent, did not, on analysis, support respondent’s position. Insofar as the intent can be reconstructed from their testimony as to the drafting chronology (their efforts to recollect their subjective intent of seven years before being unreliable), it appears that the amount of $300 each pay period had been determined upon by the parties; that the attorney for respondent, thinking he was paid semi-monthly, drafted the provision on that basis, calculating $7,200 as the total annual amount; that petitioner’s attorney knew respondent was paid bi-weekly; that respondent’s attorney, at petitioner’s attorney’s instance, agreed to a change from the term “ semi-monthly ”; that petitioner’s attorney meant to suggest to respondent’s attorney the substitution of the word “ bi-weekly,” or did in fact so suggest (that being the only possible change from ‘ ‘ semi-monthly ’ ’ that would have been advantageous to petitioner) but a typographical error was made; and that neither attorney focused on the fact that the total annual amount then had to be conformed to take into account twenty-six rather than twenty-four payments of $300 each. The failure to focus sharply on this matter might well have been due to the circumstance that respondent’s income was sufficiently large to render insignificant the minor increase in his annual liability.
Accordingly, the court holds that respondent is obliged under the divorce decree to make alimony and support payments to petitioner of $300 bi-weekly, and the court’s financial officer is directed to compute his arrears on that basis.

. See Matter of St. Joseph’s Homes v. Seaman (53 Misc 2d 1095, 1098 [Civ. Ct., N. Y., 1967]) and eases there cited.