(41 App. Div. 140.)
### FOX v. INTERNATIONAL HOTEL CO.

(Supreme Court, Appellate Division, Fourth Department.   May 24, 1899.)

CONTRACTS—CONSTRUCTION—TERMINATION—LIQUIDATED DAMAGES.
The owner of a hotel hired another to conduct it for a term of years, the latter to receive as compensation a certain sum as salary and one-half the net earnings. One provision of the contract was as follows: "It is further agreed that this contract may be terminated by either party giving the other three months' notice before May 1st of any year. Or at any time, provided a season be kept intact: and by the party so terminating it paying a certain sum in cash to the other party as liquidated damages." Held, that the parties intended such sum to be paid no matter when notice was given, and that the conjunction "and" should be regarded as connecting the first and second clauses of the above provision.
Spring, J., dissenting.

Appeal from trial term, Erie county.

Action by Mary A. Fox against the International Hotel Company. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

Spencer Clinton, for appellant.
Eugene Cary, for respondent.

ADAMS, J. On the 10th day of December, 1894, the plaintiff and the defendant entered into a written contract, by the terms of which the former was to conduct the defendant's hotel at Niagara Falls for the term of five years, for which she was to receive an annual compensation of $2,000 and a certain proportion of the net profits of the business. Among its various provisions, the contract in question contained the following, viz.:

"It is further understood and agreed that this contract may be terminated by either party giving to the other three months' notice before May 1st of any year during the five years above stated. Or at any time, provided a season be kept intact: and by the party so terminating it paying ($2,000) two thousand dollars cash to the other party as liquidated damages in full for the termination of the contract."

On the 23d day of January, 1897, the defendant, availing itself of this provision, served a written notice upon the plaintiff that it elected to terminate the contract on the 1st day of May following, but it did not pay or offer to pay any damages; and this action is brought to recover the sum of $2,000, upon the theory that the defendant became liable to pay the plaintiff that sum, by way of liquidated damages, as a condition of terminating the contract. Whatever support there is for this contention must be found in the language of the provision above quoted, and it is obvious therefore that the case requires a construction of that language in order to ascertain, if possible, what was the real intent of the parties. Various rules may be invoked in aid of the interpretation of language which is involved in obscurity, one of which is that effect shall be given, if possible, to every sentence and word of a written

instrument. Bank v. Recknagel, 109 N. Y. 482, 17 N. E. 217. This rule, however, is not inexorable. On the contrary, it is one which must always yield in cases where its application produces a result which is not in harmony with the obvious intent of the parties (Clark v. Devoe, 124 N. Y. 120–125, 26 N. E. 275), and that this is such a case we think will be made apparent by a careful examination of the clause under consideration in connection with the language which precedes it in the instrument of which it is a part. The first sentence of this clause is perfectly plain and unambiguous. It simply provides that the contract may, at any time during its life, be terminated by either party giving to the other three months' notice of an intention to terminate the same prior to the 1st day of May in any year; and this sentence closes with a period. Then follow these words, which it is claimed involve the entire clause in obscurity:

"Or at any time, provided a season be kept intact: and by the party so terminating it paying ($2,000) two thousand dollars cash to the other party as liquidated damages in full for the termination of the contract."

It is to be observed that this sentence is punctuated by a colon after the word "intact," which circumstance indicates, within the ordinary rules of punctuation, a design to emphasize a close connection between the two clauses thus separated, each of which might properly be regarded as forming a complete sentence precisely as though separated by a period. Cent. Dict. And it is argued from this that the agreement to pay a penalty of $2,000 is qualified by, and relates to, the termination of the contract permitted by the words, "or at any time, provided a season is kept intact," and that such is the only construction which will give meaning to every part of the clause. In short, it is contended that the language of the clause, properly interpreted, should read as follows, viz.:

"It is further understood and agreed that this contract may be terminated by either party giving to the other three months' notice before May 1st of any year during the five years above stated: or at any time, provided a season be kept intact, by the party so terminating it paying two thousand dollars," etc.

Of course, if the clause were thus expressed and punctuated, there would be little occasion for invoking a judicial construction of the same, for in that case its meaning would be obscured by no ambiguity. But such a construction does not appear to us a natural or proper one, nor one which reflects the obvious intent of the parties; and such intent, when it can be ascertained from surrounding circumstances, is, as has already been suggested, a controlling factor in the interpretation of contracts, the true meaning of which is to any extent obscured by ambiguity of language. It was said by Chief Justice Tindal in Glaholm v. Hays, 2 Man. & G. 257–266, that the decision of such a question as is here presented must "depend upon the intention of the parties, to be collected in each particular case from the terms of the agreement itself, and from the subject-matter to which it relates." In Wood v. Sheehan, 68 N. Y. 365–368, Allen, J., refers to the rule just cited as a familiar one, and says:

"Inconsistent clauses must be reconciled, if they may be, and effect given to the intent of the parties as gathered from the four corners of the instrument."

And in Clark v. Devoe, supra, it is said:

"A covenant is simply a contract of a special nature, and the primary rule for the interpretation thereof is to gather the intention of the parties from their words, by reading not simply a single clause of the agreement, but the entire context, and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met."

In the light of this rule, let us examine briefly the contract in question, and the circumstances under which it appears to have been executed. It seems that the defendant was the owner of a summer resort at Niagara Falls, known as the "International Hotel," and was anxious to secure the services of the plaintiff to conduct the same for a term of years. To this end negotiations were had which resulted in a written proposition being made to the plaintiff, which she thereafter accepted, and it is conceded that the proposition thereupon became a binding contract between the parties. This contract, among other things, provided that the plaintiff should conduct the hotel for the period of five years, with the right to employ a manager and such other servants and employés as were necessary. From the gross earnings of the business thus carried on she was to receive for her services the sum of $2,000 per season, and, in addition thereto, one-half of the net earnings. Thus it will be seen that the contract, in terms, secured to the defendant the services of a competent person to conduct its hotel for a long period of time, and to the plaintiff, for her services as such conductor, at least $10,000, in addition to her living; and the contention of the defendant is in effect that, notwithstanding this feature of the contract, either party was at liberty to deprive the other of the advantages thus secured without incurring any penalty therefor, provided only that three months' notice of an intention to terminate the contract were given at any time prior to May 1st in any year. That it was the intention of the parties to relinquish the advantages severally secured to them by the terms of this contract without receiving some adequate compensation therefor is simply incredible. It is much more reasonable to suppose that its termination was made possible upon condition that the party terminating it should indemnify the other for the damage which was certain to ensue, whether the period of actual termination was prior or subsequent to May 1st. Provision for such a contingency is something which would naturally be considered by parties when entering into a contract like the one under consideration, and it is one which would most likely be made when their minds met. Indeed, we fail to see how any different view can be entertained without disregarding the motives and considerations which ordinarily actuate parties when entering into business relations with each other, and so strongly are we impressed with the idea that such was the real intent of these parties that we feel constrained to hold that the conjunction "and" must be regarded as performing the office of a copula between the first sen-

tence of the clause under consideration and the phrase, "or at any time, provided a season be kept intact"; and, this being the case, it follows that the construction adopted by the learned trial court cannot receive our approval.

The judgment appealed from should therefore be reversed, and a new trial had, with costs to the appellant to abide the event.

HARDIN, P. J., and McLENNAN, J., concur.    SPRING, J., dissents.

SPRING, J. (dissenting).   The parties entered into an agreement which consisted of a written proposition made by the defendant and an acceptance by letter of the plaintiff.   The purport of the contract so made was that plaintiff became the manager of the defendant's summer hotel at Niagara Falls for the period of five years at a compensation of $2,000 per year, with one-half of the net earnings, as defined in the proposition referred to.   At the close of this written offer of the defendant occurs the following provision:

"It is further understood and agreed that this contract may be terminated by either party giving to the other three months' notice before May 1st of any year during the five years above stated.  Or at any time, provided a season be kept intact; and by the party so terminating it paying ($2,000) two thousand dollars cash to the other party as liquidated damages in full for the termination of the contract."

On the 23d day of January, 1897, the defendant gave to the plaintiff the following notice:

"Niagara Falls, N. Y., January 23, 1897.

"Mrs. Mary A. Fox, Dayton, Ohio—Dear Madam:  In accord with the contract dated December 10, 1894, between yourself and the International Hotel Company, I hereby give you the three-months notice prior to May 1st specified in the contract, that we elect to terminate said contract as provided therein.

"The International Hotel Company,
"Per Arthur Schoellkopf, Secy. & Treas."

The contention of the plaintiff is that the payment of the $2,000 as liquidated damages is a condition precedent to the termination of the agreement, and she has brought this action to recover that sum.   In the interpretation of written contracts two elementary rules obtain:   (1) The intent of the parties must dominate.  Coleman v. Beach, 97 N. Y. 545.   And in ascertaining that intent, not only must the whole context be considered, but resort may be had to the surrounding circumstances, to the situation of the parties, and to whatever will shed light upon any ambiguity existing in the writing.   Clark v. De Voe, 124 N. Y. 120–124, 26 N. E. 275; Krakauer v. Chapman, 16 App. Div. 115, 45 N. Y. Supp. 127.   (2) Every part of the instrument must be considered and given its natural, ordinary meaning, if that can be done without violating the intent of the parties.   Ripley v. Larmouth, 56 Barb. 21; Insurance Co. v. Roost, 55 Ohio St. 581, 45 N. E. 1097.   The extraneous facts are of but little significance in aiding us to interpret this agreement.   The hotel was open during less than half a year.   From June 1st to about November 1st comprised its season.   While in operation, plaintiff was in charge, and had a certain compensation, and, if the business

proved profitable, this would be still further augmented. But all that does not elucidate the question now controverted by the parties. By the terms of the provision permitting either party to terminate the agreement, the parties seeking to annul it had two opportunities: First. By giving the three-months notice. That has reference to the 1st of May, so any notice earlier than the 1st of February was within the stipulation period. It could be given any time during the summer preceding if desired, but it would not be operative until the succeeding May; and the shortest time within which this notice could be served was three months. Second. For some reason the parties were not satisfied with this ironclad requirement, so they provided another method by which the life of this agreement could be brought to an end; that was, either party could nullify the agreement at any time, except pending the hotel season. But the exercise of this privilege must be accompanied with the payment of $2,000, which were damages fixed by the parties for the sudden ending of the service. There is no repugnance in these two clauses, and this interpretation gives full effect to each of them, and is harmonious with the intention of the parties so far as we can gather their meaning either from the agreement itself, or the circumstances surrounding its execution and performance. If, as is contended, the $2,000 were to be paid whenever the agreement was terminated, then the three-months provision is meaningless. It is obvious the parties never contemplated consenting to a termination of the agreement during the continuance of a season. Therefore the latter clause permitted either party to put an end to the agreement at any time, except when the hotel was in operation. Unless that was embodied in the contract, to be operative only when the $2,000 were paid, then the three-months limitation is surplusage; for if $2,000 must be paid in any event, and the parties are allowed to cut short the life of the contract at any time, of course there is no sense in requiring notice three months anterior to the happening of that event. These are two independent provisions, entirely consistent with each other, and the parties are entitled to have due significance accorded to each. It is urged, however, that it is unreasonable that plaintiff should terminate the contract, cutting off her salary and her right to the net earnings, without some pecuniary benefit accruing to her. The parties made that kind of an agreement, and it is not novel and not harsh in its terms. The plaintiff might become dissatisfied with her position, she might receive a more advantageous offer, she might have anticipated a larger income from the net earnings, and failed to realize her expectations, or any other reason might prompt her to terminate a perhaps undesirable agreement. Any of the same motives might induce defendant to cancel the agreement. The parties therefore gave each that privilege,—only it must be exercised sufficiently long before the opening of the hotel season to enable the plaintiff, on the one hand, to secure another situation, and to permit the defendant, on the other, to engage a suitable manager in place of the plaintiff. Then, to guard against any unfair advantage, the ending of the contract, except upon the stipulated three-months notice, must be at the cost of $2,000 to the party nullifying it. This

interpretation gives force to each clause of the agreement, creates no inconsistencies, and does no violation to the intention of the parties.

While in the construction of an agreement too much weight cannot be given to the punctuation (In re Brooklyn El. R. Co., 125 N. Y. 434, 26 N. E. 474), yet I find nothing in the interpretation of the contract here given which violates any rule the most punctilious litterateur might suggest. The first provision as to terminating the agreement ends with a period. That indicates a distinct, independent provision, complete in itself. Then another provision is stated, and a semicolon separates its clauses. This is not an infrequent mark of punctuation in the separation of two divisions of a sentence. It is often used in the place of a comma. In sentences of this composition it is a common method of interpretation that the ending clause or phrase applies to the last subject-matter to which it is pertinent, unless the clauses are connected by commas denoting the qualifying phrase is applicable to all the preceding clauses. It is unusual to make the qualifying clause jump a period and be tacked on the first sentence. Where an agreement is ambiguous, its practical construction by the parties is of much force. Woolsey v. Funke, 121 N. Y. 87, 24 N. E. 191. This notice was served January 23d, stating it was under the three-months provision. No suggestion or claim was made by plaintiff until the 7th of May that the payment of $2,000 was requisite to make this notice effective. She testified that she expected to continue in the hotel under another proprietor, and it was not until that hope was blasted that it occurred to her that she could exact this sum upon the termination of the agreement. If her contention is correct, the $2,000 should have accompanied the notice, and, had she so understood the agreement, she would have been swift to insist upon its payment.

In this case the defendant avers in its answer that, if this interpretation cannot be fairly spelled out of the agreement itself, it is because of an error of the scrivener or typewriter, and that it fails to coincide with the intention of the parties, and a reformation is asked for. Under this averment, proof was taken of the negotiations of the parties preliminary to the agreement, and the learned trial judge finds as a fact that the construction put upon the agreement by him is consonant with the intent and parol understanding of the parties. This finding was based upon adequate, competent testimony (Born v. Schrenkeisen, 110 N. Y. 55, 17 N. E. 339), and the judgment should not be disturbed in any event.

The judgment should be affirmed, with costs to the appellant.