PECK v. REID.

(Otsego County Court.　May 6, 1910.)

1. LANDLORD AND TENANT (§ 297*)—SUMMARY PROCEEDINGS—"DEMAND FOR RENT."

The "demand for rent," within Code Civ. Proc. § 2231, subd. 2, authorizing summary proceedings against a tenant holding over after default in payment of rent, when "a demand of rent has been made" or at least three days' notice in writing, requiring, in the alternative, the payment of the rent, or the possession of the premises, has been served, is one made to the tenant personally for the payment of the rent absolutely, as distinguished from the three days' notice in the alternative.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 297.*

For other definitions, see Words and Phrases, vol. 2, p. 1977.]

2. LANDLORD AND TENANT (§ 297*)—SUMMARY PROCEEDINGS—"DEMAND FOR FOR RENT."

The "demand for rent," which, under Code Civ. Proc. § 2231, subd. 2, will authorize summary proceedings against a tenant, must, in the absence of provision in the lease to the contrary, be not only for the exact amount due, on the day it becomes due, and at the place it was payable, but at a convenient time before sunset.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 297.*]

3. LANDLORD AND TENANT (§ 304*)—SUMMARY PROCEEDINGS—SERVICE OF PRECEPT—RETURN.

Under Code Civ. Proc. § 2240, requiring the precept in summary proceedings to be served: (1) By delivering a copy to the person to whom it is directed; or (2) if he resides in the city in which the property is situated, but is absent from his dwelling house, authorizing the service by delivery of a copy at his dwelling house, to a person of suitable age and discretion, who resides there—the return, while showing R., the tenant, was absent, not certifying that he was absent from his dwelling house, or that Mrs. R., with whom a copy was left, was a person of suitable age and discretion, who resided there, was insufficient to show proper service.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 304.*]

4. LANDLORD AND TENANT (§ 96*)—CONTINUANCE OF RELATION—CONTRACT FOR SALE.

Plaintiff, after leasing land to defendant, made a contract, by which he agreed to sell, and defendant agreed to buy, it for a certain sum, which defendant agreed to pay on delivery of the deed, on or before six days thereafter; defendant to pay rent till deed was delivered, and any rent paid in advance to be refunded. It was provided that in case any lawful reason should be found why defendant should not accept plaintiff's title, or there should appear to be any defect in his title, so that plaintiff might lawfully refuse to accept it, both parties would thereby be released from the contract; that at the time and in the manner mentioned plaintiff should deliver to defendant a warranty deed; and that defendant should have possession of the premises from and after delivery of the deed. *Held*, that the relation of landlord and tenant was not extinguished, by merger of the tenant's title into that of the land-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

lord, on the signing of the contract; and that plaintiff having a wife, with an inchoate right of dower in the land, and having tendered a deed signed only by himself, there was a lawful reason why defendant should not accept his title, so that, defendant having refused to accept the deed, both were released from the contract, and the relation of landlord and tenant continued.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 96.*]

Appeal from City Court of Oneonta.

Summary proceedings by Alfred C. Peck against Samuel M. Reid. From an order for plaintiff, defendant appeals. Reversed.

B. W. Hoye, for appellant.
Alva Seybolt, for respondent.

KELLOGG, J. This is an appeal from an order of the City Court of Oneonta, entered upon the verdict of a jury in summary proceedings, awarding to the plaintiff certain premises situate on Cherry street in the said city, for nonpayment of rent, under subdivision 2, § 2231, of the Code of Civil Procedure. There are three questions raised on this appeal. It is claimed: (1) That no legal or proper demand was made on the defendant for the payment of said rent. (2) That the proof of the service of the precept is insufficient and defective. (3) That the relation of landlord and tenant merged in a certain contract of sale (Ex. A in evidence), and that the defendant, and not the petitioner, is the owner of the property in question.

It appears that the premises in question were leased by the appellant, Reid, in September, 1908, for the monthly rental of $12, which was to be paid in installments of $6 every two weeks, and that he was still occupying the same at the time of the commencement of this action on the 14th day of February, 1910, and that he had paid rent, as the tenant of the respondent, to the 1st day of December, 1909, but he had refused to pay rent after said date by reason of the execution of a certain contract between the parties (Exhibit A).

In order to maintain the proceedings in this case, and to become entitled to an order removing the tenant, Reid, from the premises in question, it was incumbent upon the petitioner to prove either that he had demanded the rent, which was due, or that he had served upon Reid, in behalf of the person to whom the rent was due, at least three days' notice in writing requiring the payment of the rent or the possession of the premises. Code Civ. Proc. § 2231, subd. 2.

The landlord, Peck, elected to base this proceeding upon a demand for the payment of the rent, and relies upon Exhibit A in evidence for such demand, and the evidence of Henry M. Bard, wherein he states that he went to the house of the tenant between 7 and 8 o'clock in the evening, and told him that he had come to the house to demand the rent for the house. "I said, 'I demand the rent, and do you refuse to pay it?' and he said he did, and I served the papers on him. Exhibit A is a copy of the paper I handed to Reid." It might possibly be found from this evidence that there was, in general terms, a demand for the rent, but later on the witness qualified the evidence in question by saying that Exhibit A was his demand for the rent, and,

this being so, clearly it was not the demand required by the Code, as it was not equivalent to a personal demand; that is, one made to the tenant personally for the payment of the rent absolutely, as distinguished from the three days' notice to pay or surrender possession of the premises. Tolman v. Heading, 11 App. Div. 264, 42 N. Y. Supp. 217; People ex rel. Simon v. Gross, 50 Barb. 231.

It was not only essential for the respondent either by himself or his agent to have made a personal demand for the rent, but the demand must have been for the precise rent due, on the day on which the rent was due, and payable by the lease, and at a convenient time before sunset, and the paper writing (Exhibit A) handed to the tenant at his house on the 25th day of January, 1910, at about 7:30 o'clock p. m., was not a compliance with such requirements. Wolcott v. Schenk, 16 How. Prac. 451; Jackson v. Harrison, 17 Johns. 66; Van Rensselaer v. Jewett, 2 N. Y. 144.

Where a right to re-enter for a breach of the covenant to pay the rent was reserved, unless the lease prescribe a method for making the demand for the rent, it was necessary for the landlord to proceed according to the common law, and either in person, or by his duly authorized agent, to make an actual demand of the exact amount of the rent due on the very day it became due, at a convenient time before sunset, so that the money could be counted before night, at the precise place where the rent was made payable. Martin v. Rector, 118 N. Y. 479, 23 N. E. 893; Cyc. vol. 24, 1355, 1356; Remsen v. Conklin, 18 Johns. 447; Livingston v. Miller, 11 N. Y. 85. To the same effect is Prout v. Roby, 15 Wall. 476, 21 L. Ed. 58.

Section 2240 of the Code of Civil Procedure provides how the precept must be served in summary proceedings, and states that such service must be made as follows:

"(1) By delivering, to the person to whom it is directed. * * * (2) If the person, to whom the precept is directed, resides in the city or town in which the property is situated, but is absent from his dwelling house, service may be made by delivering a copy thereof at his dwelling house, to a person of suitable age and discretion, who resides there; or, if no such person can, with reasonable diligence, be found there, upon whom to make service, then by delivering a copy of the precept, at the property sought to be recovered, either to some person of suitable age and discretion residing there, or if no such person can be found there, to any person of suitable age and discretion employed there."

The return of the precept in this case certifies that it was served upon said tenant, Samuel M. Reid, by delivering a copy of said precept and at the same time showing him the original with the indorsement thereon to Mrs. Samuel M. Reid; Samuel M. Reid not being at home. After the plaintiff had closed his case, and the defendant had made his motion for a nonsuit, the court, in its discretion, allowed the plaintiff to open his case for the purpose of receiving some evidence of the constable, who made the return, as to how, and in what manner, the service of the precept was made, but no substantial change was made in the situation here by the evidence thus given.

The proof of the service of the precept here is clearly insufficient and defective, and was not such a service as is required by subdivision

2 of section 2240 of the Code. It shows that Reid was absent, but fails to certify that he was absent from his dwelling house, and that the copy served was left with a person of suitable age and discretion who resided there. People v. Keteltas, 12 Hun, 67; Posson v. Dean, 8 Civ. Proc. R. 177; Beach v. McGovern, 41 App. Div. 381, 58 N. Y. Supp. 493; Tolman v. Heading, 11 App. Div. 264, 42 N. Y. Supp. 217; Matthews v. Carmen, 122 App. Div. 585, 586, 107 N. Y. Supp. 694.

Having reached the conclusion that this judgment must be reversed for the reasons already stated, it is not necessarily essential that a determination should be reached as to the rights of the respective parties herein under the contract of sale, which was received in evidence and marked "A." It is obvious, however, that a speedy determination should be had upon all of the questions at issue between the parties in this case, and especially those which have arisen out of the contract.

The contract in question bears date of the 25th day of October, 1909, and it is mutually agreed therein that the party of the first part is to sell, and the party of the second part is to purchase, the premises now leased to second party; second party to pay rent until the deed is delivered, and any rent paid in advance shall be refunded, for the sum of $1,700, which second party agrees to pay in cash upon the delivery of the deed on or before December 1, 1909. It is also provided therein as follows:

"In case there shall be found any lawful reason why second party shall not accept first party's title, or there shall appear to be any defect in his title, so that second party may lawfully refuse to accept the same, both parties will thereby be released from this contract."

The usual provision then follows in regard to the payment of taxes and assessments, which are liens thereon, and "that at the time and in the manner above mentioned, the first party shall, at his own proper cost and expense, execute and deliver to the party of the second part a warranty deed of said premises and furnish a sufficient search for the same." It also contains the further provision:

"That the party of the second part shall have possession of said premises from and after the delivery of said deed."

It is contended, in behalf of the appellant here, that the contract of sale and purchase between himself and the respondent is absolute, and that when the contract was signed the relation of landlord and tenant terminated, and that, the tenant having acquired by purchase the interest of the landlord, there was a merger of the tenant's title into that of the landlord, and that the term created by the lease was extinguished, and that the duties and obligations of the parties to one another ceased. It appears from the evidence that on the 1st day of December, 1909, Reid took $1,700 in cash to Mr. Seybolt's office, in whose hands the contract had been left, presumably for safe-keeping, and offered the same to Mr. Seybolt and demanded the title or deed to the premises in question; but it does not appear that any demand was made at this time of Peck or his agent for a title deed. Later on, and about the 11th day of January, 1910, Peck tendered to

Reid a deed, executed by himself only, which Reid refused; it having developed in the meantime that Peck had a wife living, and that the respondent was the owner of the real estate in question at the time of his marriage to this wife. It is likewise contended by the appellant that there was an implied warranty by Peck that he had a good, marketable title, and that he was bound, as a matter of law, to transfer it to Reid, and that he had contracted to give a warranty deed, and that his wife must be a party to it, and that it is his duty to see to it that the wife conveys her inchoate dower right.

The primary rule for the interpretation of a contract is to gather the intention of the parties, not from a single clause, but from the entire context. Lantry v. Mayor, 19 Misc. Rep. 558, 44 N. Y. Supp. 874. The intention of the parties must be sought in the language of the instrument, and due force and effect given to all of its various provisions when read in connection with each other. Marvin v. Stone, 2 Cow. 781; Fox v. International Hotel Co., 41 App. Div. 140, 58 N. Y. Supp. 441. Such surrounding circumstances must be taken into consideration as the parties are presumed to have considered when their minds met. Fox v. International Hotel Co., supra.

Reid, the tenant, was to pay rent "until the deed is delivered." "In case there shall be found any lawful reason why second party should not accept first party's title, or there shall appear to be any defect in his title so that second party may lawfully refuse to accept the same, both parties will thereby be released from this contract."

It is presumed that the parties understood the terms of the contract, and the language therein employed was intended to mean something, and was inserted for the purpose of carrying out that intention. It follows, therefore, that Reid, the tenant, was to pay rent until the deed was delivered, and that in case there was any lawful reason why he should not accept Peck's title, or that there appeared to be any defect in his title, so that he might lawfully refuse to accept the same, then both parties should be released from the contract. It having been ascertained that the wife of Peck was living, and that she had an inchoate dower right in the premises at the time the contract was made, and that she had not joined in a conveyance, was that fact a lawful reason why Reid should not accept Peck's title, or from that fact, had it appeared that there was a defect in his title so that Reid might lawfully refuse to accept the same?

Dower is an interest in land which attaches upon the concurrence of marriage and seisin. Denton v. Nanny, 8 Barb. 618. The settled theory of the law as to the nature of an inchoate right of dower is that it is not an estate or interest in land, but is a contingent claim incapable of transfer by grant or conveyance, but susceptible only during its inchoate state of extinguishment. By force of the statute, this is effected by the act of the wife in joining with her husband in the execution of a deed of the land. Such deed, so far as the wife is concerned, operates as a release or satisfaction of the interest, but not as a conveyance, and removes an incumbrance, instead of transferring an interest or estate. Witthaus v. Schack, 105 N. Y. 337, 11 N. E. 649. It is a mere chose in action, which cannot be sold upon execution.

Until that time it is strictly a claim. Lawrence v. Miller, 2 N. Y. 245; Lawrence v. Brown, 5 N. Y. 394.

In discussing the nature of the act of the wife in joining her husband in the execution of a deed, Earl, J., said:

"When she has united in the conveyance, her dower is said to be barred, extinguished, removed. Such is the language of Kent and other legal writers. Judge Willard, in his work on Real Estate (page 61), says: 'The inchoate right to dower is in this state an incumbrance upon the estate of her husband, and the object of uniting the wife in the conveyance is to extinguish her inchoate right of dower.'"

It would seem clear, therefore, that the inchoate dower interest of the wife in the real estate of the husband is a contingent claim existing as a possible incumbrance, and was, in this instance, a cloud no Peck's title. It matters not that a good title may have been conveyed to Peck from his grantor, and that the title he thereby acquired, as granted, was absolutely without any flaw; nevertheless there was not only at the time of the signing of the contract, but at the time he tendered a conveyance, a lawful reason why Reid should not accept his title, and there was such a defect in his title that Reid might lawfully refuse to accept the same, to wit, a contingent claim existing as a possible incumbrance, to wit, the inchoate dower right of the wife; and it therefore follows, as a matter of law, that both parties were released from the contract.

While the contract provides for a warranty deed which will insure the vendee of a marketable title, yet the language employed by the clause already quoted must be held to relieve Peck from conveying any better title than he now has, or had at the time the contract was signed. He is absolutely bound, however, to convey all the title he has by warranty deed, provided Reid is willing to accept it.

The contract also provides that the second party shall have possession from and after the delivery of the deed; therefore, even though the deed be wrongfully withheld, the appellant is neither legally nor equitably entitled to possession, for that is the condition of the contract; and in view of all the provisions, read together, the doctrine of merger cannot be held as applicable thereto.

Notwithstanding the conclusions reached as to the contract, the verdict of the jury and order and judgment of the City Court should be reversed, with costs.

Judgment reversed; with costs.