### CLARK v. DE WANDELAER.

#### (Montgomery County Court.)

1. CONTRACTS (§ 147*)—CONSTRUCTION—INTENT.

   While a written contract is to be construed according to the intent of the parties, to be determined from the whole writing, the determination must not be influenced by any considerations save those justified by the agreement itself.

   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 730, 743; Dec. Dig. § 147.*]

2. LANDLORD AND TENANT (§ 322*)—CROPPING CONTRACT—CONSTRUCTION.

   A farm lease on shares provided that plaintiff should pay defendant as rent one-half of the crops and products except stock, cornstalks, beans, and fodder, and that until division the crops and products, including the money derived from the sale of milk, should be defendant's property as security for plaintiff's faithful performance of the contract and for advances, and as security that plaintiff would pay one-half of the taxes. A subsequent provision declared that defendant might retain title to the crops and products of the farm and the avails of the milk as security for the faithful performance of all the provisions of the lease. The cows on the farm belonged to defendant, and plaintiff agreed to pay $1.50 as interest on each cow, one-third to be deducted from plaintiff's share of the milk checks received in June, July, and August, respectively. The milk checks during the year prior to November, 1909, had in fact been divided

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on the 15th of each month. Plaintiff was also bound to clean, bag, and prepare grain, corn, beans, and potatoes for market, and to feed his own grain after division to his horses and poultry, and give three days' notice in writing before division of the crops. *Held*, that such notice requirement did not apply to the division of the proceeds of the milk, and that defendant was not entitled to keep the proceeds of the milk checks undivided until the termination of the contract as security for plaintiff's performance of its terms; such retention as security being authorized only to the extent necessary for defendant's protection as to any part of the contract unperformed at the time when there were proceeds to be divided.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 322.*]

Appeal from Justice Court.

Action by Jacob Clark against Georgiana P. De Wandelaer. Judgment for plaintiff, and defendant appeals. Affirmed.

H. D. Walts, for appellant.
Fox Sponable, for respondent.

MOORE, J. This is an appeal from a judgment rendered in justice's court upon the verdict of a jury, for $108 damages, and $15 costs, in favor of the plaintiff and against the defendant. The correctness of the judgment depends largely upon the construction that should be given to a written contract under which plaintiff worked defendant's farm on shares for a term beginning February 1, 1909, and ending February 1, 1910. The plaintiff brought action claiming for work, labor, and services without the contract, and also for claimed damages under the contract, crediting defendant with certain payments, and alleging a balance due to him of $116.05. Among the items claimed was one for $108.93, being one-half part of a check for $217.87, received by defendant November 15, 1909, representing the milk delivered at the factory during October, 1909. The contract provided that the plaintiff was to pay the defendant for the use of the premises the rent of one-half of all crops and products as therein provided; each party to have for his own one-half of all the products of the farm, except stock, cornstalks, beans, and fodder. The milk checks were to be made out in the name of the defendant. The contract also contains the following provisions:

"It is further mutually agreed that until a division of the crops and products of the said farm, all crops and products thereof, including the money derived from the sale of milk of the dairy on said farm, shall belong to and be the property of the party of the first part (defendant) as her security for the faithful performance of this contract by and on the part of the party of the second part (plaintiff); and as security for any advances or loans made to the party of the second part, and for any seeds, plaster and phosphate beyond or in excess of one-half furnished, bought or paid for by the party of the first part, and as security for any taxes which first party may have to pay beyond or in excess of first party's one-half thereof to pay, and in case second party does not pay the one-half of said taxes which he is to pay under the term of this lease during the time said taxes are payable at one per cent., then first party may pay second party's one-half and deduct the amount thereof from second party's share of milk checks, and second party hereby agrees thereto, and that upon any division of said crops or products, the party of the first part shall own and be entitled to, in addition to one-half

thereof, to a sufficient amount thereof to pay her all advances and loans made to the party of the second part, and for all seeds, plaster and phosphate in excess of one-half thereof, bought, furnished or paid for by the said party of the first part."

A subsequent provision of the contract reads:

"And first party may retain title to the crops and productions on said farm, and avails from the milk as security for the faithful performance of all provisions in this lease to be performed by second party."

This action was commenced November 23, 1909.

The defendant contends that she had a right to retain the plaintiff's half of the milk check in question until the end of the term of the contract, as security for its performance by plaintiff, and that as to such item the action is prematurely brought. In other words, the claim is that the defendant had the right to hold crops and products of the farm until the end of the year as security for the faithful performance of the contract on the part of plaintiff.

If such were the intention of the parties, the contract was certainly a very exceptional one. However, the relative obligations of the parties are to be determined by the terms of their contract, and they are not left to surmise or inference. Their determination is not to be influenced by any considerations save those justified by their agreement; for, when parties have made their contract, it is the duty of the court to enforce it as they have elected to make it. Norcross v. Wills (Court of Appeals, April 26, 1910) 198 N. Y. 336, 91 N. E. 803; Coulter v. Board of Education, 63 N. Y. 365. Or, as was said in Loud v. Pomona Land, etc., Co., 153 U. S. 576, 14 Sup. Ct. 932 (38 L. Ed. 822):

"If the language is clear and unambiguous, it must be taken according to its plain meaning as expressive of the intention of the parties, and under settled principles of judicial decision should not be controlled by the supposed inconvenience or hardship that may follow such construction."

But it is always the duty of the court in construing a written instrument, if possible, to ascertain the intention of the parties; and in order to determine its proper construction resort must be had to the instrument as a whole, and effect must be given to every clause and part thereof when it can be done without violence (Sattler v. Hallock, 160 N. Y. 291, 297, 298, 54 N. E. 667, 46 L. R. A. 679, 73 Am. St. Rep. 686); and such surrounding circumstances must be taken into consideration as the parties are presumed to have considered when their minds met (Fox v. International Hotel Co., 41 App. Div. 140, 58 N. Y. Supp. 441; Peck v. Reid [Co. Ct.] 123 N. Y. Supp. 253).

An examination of the entire contract does not justify the construction claimed for it by the appellant.

The language above quoted from the contract indicates that there were to be from time to time divisions of the crops and products.

The cows on the farm belonged to the defendant, and the plaintiff was to pay her $1.50 as interest on each such cow; one-third of which was, by the terms of the contract, to be deducted by defendant from plaintiff's share of the milk check falling due June 15th, one-third from the check falling due July 15th, and one-third from the check falling due August 15th. The reasonable assumption is that these provisions were inserted in the contract so that the plaintiff might pay for the

use of the cows in easy payments, and so that the defendant could not deduct it all from plaintiff's share of the milk checks that first came in; which assumption is not at all consistent with defendant's contention that she had a right to hold plaintiff's share in all the checks until the end of the year, as security for the performance of the contract on his part.

The attorney for the defendant stated on the argument that the milk checks had been, in fact, divided on the 15th of each month previous to November, 1909. If there is ambiguity as to the meaning of the contract relating to the division of the proceeds of the milk checks, the acts of the parties in dividing such proceeds each month gives a practical interpretation which is of great importance in determining the intent. Woolsey v. Funke, 121 N. Y. 88, 24 N. E. 191.

There are other provisions in the contract tending to show that the intent was that the crops and products should be divided from time to time; the plaintiff was to "clean, bag and prepare grain, corn, beans and potatoes for the market." The products of the farm were "to be divided at the barn * * * grain, corn, beans and potatoes in the half bushel, apples by the barrel and bushel in the orchard." The plaintiff had the privilege of keeping poultry, which he was to "feed from his own grain after divided." Plaintiff was to "feed his own grain to his horses after it was divided."

The fair construction of the contract would seem to be that the proceeds from the milk checks were to be divided from time to time as received, and that upon each division defendant might hold plaintiff's share of the proceeds to the extent only that it was necessary for her to do so to protect herself for the faithful performance of the contract on the part of the plaintiff to be performed to that time. Any other construction would make the contract unreasonable and place the plaintiff at the mercy of the defendant; and this may properly be taken into consideration. Russell v. Allerton, 108 N. Y. 288, 15 N. E. 391.

It does not appear that the plaintiff was in default under the contract when defendant received the check for the October milk. On the other hand, he testified that in his complaint he gave her credit for everything down to the time of the commencement of this action, and on the trial he gave proof as to what those credits were. The defendant did not dispute this, but made her defense as to the proceeds of the milk check solely on the theory that the action was prematurely brought.

The provision of the lease requiring three days' notice in writing before division of crops would scarcely seem to have been intended to apply to the division of the proceeds from the milk, but rather to grain, corn, beans, potatoes, apples, etc.

Certain objections were taken by the defendant to the admission of testimony claimed to have been illegal. Whatever merit there may be in such objections, there is abundant competent evidence in the case to support the judgment, exclusive of such evidence objected to, and the judgment should be affirmed, with costs to the respondent.

Order may be prepared directing judgment accordingly.